IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 122,867

In the Matter of ADEBAYO I. OGUNMENO,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed December 11, 2020. Disbarment.

*Matthew J. Vogelsberg*, Deputy Disciplinary Administrator, argued the cause, and *Penny R. Moylan*, former Deputy Disciplinary Administrator, and *Stanton A. Hazlett*, Disciplinary Administrator, were on the formal complaint for the petitioner.

*Adebayo I. Ogunmeno*, respondent, argued the cause pro se.

PER CURIAM:  This is an uncontested attorney discipline proceeding against Adebayo I. Ogunmeno. Respondent was admitted to the practice of law in the state of Kansas on April 26, 1991.

On January 25, 2019, the Disciplinary Administrator's office filed a formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The Disciplinary Administrator's office then filed an amended complaint on October 10, 2019. Respondent failed to file an answer to either complaint.

A panel of the Kansas Board for Discipline of Attorneys held a hearing on December 5, 2019. Respondent failed to appear. The hearing panel determined he violated KRPC 1.1 (2020 Kan. S. Ct. R. 291) (competence); KRPC 1.3 (2020 Kan. S. Ct. R. 295) (diligence); KRPC 1.4 (2020 Kan. S. Ct. R. 296) (communication); KRPC 1.16

1

(2020 Kan. S. Ct. R. 340) (declining or terminating representation); KRPC 3.1 (2020 Kan. S. Ct. R. 352) (meritorious claims and contentions); KRPC 3.2 (2020 Kan. S. Ct. R. 353) (expediting litigation); KRPC 3.3 (2020 Kan. S. Ct. R. 353) (candor toward the tribunal); KRPC 3.4 (2020 Kan. S. Ct. R. 357) (fairness to opposing party and counsel); KRPC 8.1 (2020 Kan. S. Ct. R. 392) (bar admission and disciplinary matters); KRPC 8.4 (2020 Kan. S. Ct. R. 394) (misconduct); Kansas Supreme Court Rule 208 (2020 Kan. S. Ct. R. 247) (attorney registration); and Kansas Supreme Court Rule 211(b) (2020 Kan. S. Ct. R. 251) (timely answer to formal disciplinary complaint).

Upon conclusion of the hearing, the panel made findings of fact, conclusions of law, and a disciplinary recommendation. Respondent took no exceptions to the hearing panel's report. Before this court, the Disciplinary Administrator's office endorses the panel's findings and recommends disbarment. We quote the report's pertinent parts below.

"*Findings of Fact*

. . . .

"17.     Adebayo I. Ogunmeno (hereinafter 'the respondent') is an attorney at law, Kansas attorney registration number 14808. His last registration office address with the clerk of the appellate courts of Kansas is 155 S. 18th Street, Suite 250, Kansas City, Kansas 66102. The respondent's last registration home address with the clerk is 3742 N. 113th Street, Kansas City, Kansas 66109.

"*License History*

"18.     The Kansas Supreme Court admitted the respondent to the practice of law on April 26, 1991. It should be noted that at the time the Supreme Court admitted the respondent to the practice of law, he was known as Sulaimon Adebayo Hassan. On

2

February 7, 2001, the respondent notified the clerk's office that he changed his name to Adebayo Ifasesan Ogunmeno.

"19.     On October 8, 2019, the Supreme Court issued an order suspending the respondent's license to practice law for failing to comply with the annual requirements to maintain a law license. The respondent's license remains suspended.

"*DA12759*

"20.     In early 2015, Judge Lori Fleming and Judge Kurtis Loy learned that a group of individuals purchased radio advertisements promote the ouster of the sitting judges in their community. On February 19, 2015, Judge Fleming sent an email message to Bill Wachter, the attorney for the radio station. The email message stated:

> 'Is this your station? Kurt is saying [E.M.] and posse cometaut [*sic*] have an ad on this station to oust all the judges. I would just like to know since my kids watch Colgan live [*sic*] through this station. Thanks.'

"21.     On February 18, 2016, the respondent filed suit on behalf of eighteen plaintiffs, including K.K. and E.M., in the United States District Court for the District of Kansas, case number 16-2108-JAR, against Judge Lori Fleming, Judge Kurtis Loy, My Town Media, Inc., and J.M. In the complaint, the respondent alleged civil rights violations, breach of contract, fraud, tortious interference with contractual relations, and defamation based on an allegation that the defendants demanded that the plaintiffs' radio advertisements be cancelled.

"22.     On May 13, 2016, the respondent filed an amended complaint adding thirty additional plaintiffs.

"23.     By July 25, 2016, all defendants had filed motions to dismiss the complaints.

3

"24.     Without seeking leave of the court or without the opposing parties' consent, in violation of Fed. R. Civ. P. 15(a), the respondent filed a second amended complaint on July 27, 2016, adding Bill Wachter as a defendant. The second amended complaint added allegations regarding Judge Fleming's and Judge Loy's actions to persuade the radio station to take plaintiff's radio advertisements off the air. Specifically, the second amended complaint alleged the following:

'48.     Meanwhile, in furtherance of the agreement and conspiracy between Fleming and Loy to infringe on plaintiffs' constitutional rights, defendant Fleming on February 19, 2015, willfully and intentionally prepared [*sic*] wrote an email to defendant Wachter, and for maximum effects, deliberately use [*sic*] her (Fleming) official court assigned e-mail account, which essentially states as follows:

"Bill Wachter, is this your station? Kurt is saying [E.M.] and posse cometaut [*sic*] have an ad on the station to oust all the judges. I would just like to know since my kids **were listening when I heard the ad this morning on my way to work. If so, get it off."'**

Exhibit 2, which the respondent attached to the second amended complaint, includes a portion of the original email message. However, a portion of the email message is cut off. In its place, superimposed altered language was added. The altered language is emphasized above. The altered language used in Exhibit 2 attached by the respondent to the second amended complaint is false.

"25.     Defendants filed motions to strike the second amended complaint. Thereafter, the respondent filed a motion for leave to file the second amended complaint *nunc pro tunc*. On November 17, 2016, the court granted the defendant's motion to strike and partially granted the respondent's motion for leave to file the second amended complaint *nunc pro tunc*. The court found that K.K. was the only plaintiff with standing to bring the lawsuit and dismissed the remaining plaintiffs from the lawsuit. The court granted leave for the respondent to amend the complaint a second time.

4

"26.     On November 28, 2016, the respondent again filed a second amended complaint. The second amended complaint, filed on November 28, 2016, contained the false information described above, in paragraph 50. Additionally, the respondent attached Exhibit 2, which contained the incomplete email message with the superimposed altered language.

"27.     On December 1, 2016, Judge Fleming and Judge Loy, through counsel, sent a Golden Rule Letter along with an unfiled Rule 11 motion for sanctions and memorandum in support to the respondent. The memorandum in support included a copy of the email sent from Judge Fleming to Mr. Wachter on February 19, 2015. The memorandum in support also contained an affidavit from Judge Fleming stating that the email message was a 'true and correct copy of the email [she] sent to Mr. Wachter on February 19, 2015.' In the Golden Rule Letter, counsel stated that the email referred to and attached to the second amended complaint:

> 'has been altered and is misleading to the point of being fraudulent, and your quotation of the email is likewise flawed. While a portion of the email is an incomplete photograph of a printout of a portion of the email, taken without the consent of the sender or recipient; the rest is a complete fabrication. You appear to have made no meaningful inquiry whatsoever into the accuracy or validity of the email. You have neither inquired of Loy or Fleming, of me, nor of Bernie Rhodes, counsel for Bill Wachter, of the accuracy or validity of the email you alleged that Fleming sent.'

Counsel stated that defendants would not file the motion for sanctions if the respondent withdrew the second amended complaint or agreed to dismissal within 21 days of service of the letter.

"28.     The respondent took no action. On December 22, 2016, the defendants filed the motion for sanctions based on the respondent's failure to conduct a reasonable inquiry into the manipulation of what was marked as Exhibit 2 to the second amended complaint.

5

"29.    On January 27, 2017, the court entered a memorandum and order granting the defendant's motion for sanctions. In the order, the court stated:

'Mr. Ogunmeno attached Exhibit 2 to the Second Amended Complaint, and presented the document to the Court as "an unofficial version" of the supposed email from Judge Fleming to Defendant Wachter. In reality, Exhibit 2 is much closer to a "fraudulent version" of the email than an "unofficial version." . . .

. . . .

'. . . In sum, Exhibit 2 contains at least two indicators of fraud—omitted language and language inserted by a party—and Mr. Ogunmeno understood at the time he filed the Second Amended Complaint that the Exhibit did not reflect the true email.'

The court found that the respondent failed to make a reasonable inquiry into Exhibit 2 and failed to respond reasonably when confronted with the fact that Exhibit 2 had been altered. The court found that the respondent's inclusion of the superimposed text in the complaint, without brackets or any other qualifiers, masked the fact that the quoted text was created by someone other than one of the parties to the email.

"30.    In determining that sanctions were appropriate for the respondent's Rule 11 violation, the court found 'the degree of actual prejudice to Defendants as a result of Mr. Ogunmeno and Plaintiff's conduct is great' and the respondent's failure to reasonably investigate the factual basis of the exhibit interfered with judicial process. The court dismissed the cause of action, finding, in addition, that the respondent had a history of failing to comply with court rules:

'. . . Indeed, given Mr. Ogunmeno's history of non-compliance with the Local Rules and Federal Rules of Civil Procedure, his insistence on advancing this case despite his knowledge that a document central to the litigation was

6

manipulated, and his failure to perform a reasonable inquiry into the factual basis of the Second Amended Complaint, the Court fears that Plaintiff and Mr. Ogunmeno will continue to abuse the judicial process by using altered evidence in later stages of litigation and draining judicial resources. . . .

. . . .

'. . . The court is mindful that dismissal of a case in its entirety is a harsh sanction. But the Court is equally mindful that dismissal is warranted where, as here, a party manipulates evidence that is central to the case, counsel fails to make a reasonable inquiry into such evidence, and counsel promotes the manipulated evidence with knowledge of the manipulation. Accordingly, the Court strikes the Second Amended Complaint and dismisses the case in its entirety.'

The court found that the respondent acted in bad faith and ordered the respondent, K.K., and E.M. to pay, in equal shares, all of the reasonable attorney's fees and expenses directly resulting from the Rule 11 violation.

"31.     On February 24, 2017, the respondent filed a motion to alter or amend the court's order imposing sanctions. The respondent requested the court to reconsider its dismissal of the case and imposition of sanctions and to reopen the case to allow discovery as to the authenticity of the email included with the Golden Rule Letter. On March 27, 2017, the court denied the motion.

"32.     The respondent appealed the court's orders to the United States Court of Appeals for the Tenth Circuit. On August 15, 2018, the Tenth Circuit affirmed the lower court's orders:

'The district court acted within its discretion in finding a Rule 11 violation based on Ogunmeno's submitting to it a doctored document (and incorporating that document into the unauthorized and authorized complaints).

7

This is especially so when Ogunmeno again and again clung to the falsified e-mail as true.'

"33.     Counsel for Judge Fleming and Judge Loy filed a complaint against the respondent. On April 5, 2017, the respondent provided a written response to the complaint. In his response, the respondent continued to argue the authenticity of the original email. Additionally, the respondent asserted that the email message presented by counsel for Judge Fleming and Judge Loy was 'modified and corrupted' and that counsel for Judge Fleming and Judge Loy should be investigated under KRPC 8.3.

"*DA13144*

"34.     On September 19, 2013, K.T. received a ticket in Sedgwick County, Kansas, for operating her vehicle without proof of insurance. On October 14, 2013, she was found guilty of the offense.

"35.     Later, the City of Wichita mistakenly classified K.T.'s conviction as a sex offense. K.T. claimed that she was fired from her job after her employer conducted a background check and discovered the erroneous record.

"36.     In 2014, K.T. hired the respondent to file suit against the City of Wichita. K.T. paid the respondent an initial retainer of $500. The respondent submitted a notice of claim, pursuant to K.S.A. 12-105b, on August 14, 2014. On September 29, 2014, the City of Wichita denied the claim.

"37.     On December 3, 2014, the respondent filed suit against the City of Wichita in Sedgwick County District Court Case number 14-CV-3312. The respondent, however, failed to effect service on the City of Wichita until March 9, 2015. Because the respondent failed to timely obtain service, on February 9, 2016, the district court granted the City of Wichita's motion for summary judgment.

"38.     On April 22, 2016, K.T. filed suit against the respondent alleging that he was negligent in failing to timely serve the City of Wichita, resulting in the loss of her

8

claim against the city. On October 12, 2016, the respondent filed an answer to the petition, denying negligence and asserting counter-claims of fraud and breach of contract against K.T. The respondent alleged that K.T. fraudulently informed him that she lost two jobs and suffered humiliation, emotional depression, and other damages as a result of the City of Wichita's actions. The respondent also alleged that K.T. wrongfully refused to pay outstanding attorney fees, costs, and expenses.

"39.    The case was heard by a jury and on September 21, 2017, the jury returned a verdict finding the respondent was negligent in his representation of K.T. and awarded her $40,000 in damages. The jury also found that K.T. did not breach her contract with respondent but that she committed fraud in dealing with him. The jury awarded the respondent $1,200 in damages. The respondent appealed the jury's decision to the Kansas Court of Appeals.

"40.    On May 2, 2018, the respondent filed a motion to docket the appeal out of time. The respondent was ordered to file his brief by August 2, 2018. The respondent did not file his brief by August 2, 2018. On August 14, 2018, the respondent filed a motion to file his brief out of time. On August 16, 2018, the court granted the respondent additional time to file his brief. The respondent filed his brief on August 24, 2018. K.T. filed a responsive brief on November 20, 2018.

"41.    The Kansas Court of Appeals scheduled the case for oral argument. The respondent failed to appear at the oral argument. On May 17, 2019, the Kansas Court of Appeals affirmed the lower court's actions and judgment in favor of K.T.

"42.    K.T. filed a complaint regarding the respondent's misconduct with the disciplinary administrator's office. The disciplinary administrator's office forwarded a copy of K.T.'s complaint to the respondent on July 19, 2018. The disciplinary administrator's office directed the respondent to provide a written response to the complaint within 20 days. The respondent did not provide a written response to the complaint within 20 days as directed.

9

"43. The attorney assigned to investigate K.T.'s complaint also directed the respondent to provide a written response to the complaint. The respondent did not provide a written response as directed by the attorney assigned to investigate the complaint. Eventually, two months after the deadline, which had been extended twice, the respondent provided a written response to the complaint. However, by that time, the investigation had been completed and this case was set for formal hearing.

"*DA13168*

"44. In June, 2017, P.F. hired the respondent to complete a probate case that had been opened the previous October. (P.F.'s complaint details other misconduct committed in this case by Mark Logan. Mr. Logan has since been disbarred for other misconduct.) P.F. paid the respondent a retainer of $10,000.

"45. The respondent did very little work on the probate case. Additionally, the respondent failed to respond to P.F.'s communications and the respondent left the country for several weeks during the course of the representation.

"46. Because she was dissatisfied with the respondent's representation, P.F. requested a refund of the fees paid. Rather than refund the unearned fees, the respondent demanded an additional $19,000 in attorney fees.

"47. P.F. filed a complaint with the disciplinary administrator's office regarding the respondent's misconduct in this case. The disciplinary administrator's office forwarded a copy of P.F.'s complaint to the respondent on August 13, 2018. The disciplinary administrator's office directed the respondent to provide a written response to the complaint within 20 days. The respondent did not provide a written response to the complaint within 20 days as directed.

"48. The attorney assigned to investigate P.F.'s complaint also directed the respondent to provide a written response to the complaint. The respondent did not provide a written response as directed by the attorney assigned to investigate the complaint. Eventually, six weeks after the deadline, which had been extended twice, the

10

respondent provided a written response to the complaint. However, by that time, the investigation had been completed and this case was set for formal hearing.

"49.     On January 31, 2018, the respondent entered his appearance in two criminal cases regarding the same client, R.C.M., in Johnson County District Court. The client faced drug charges as well as charges related to a drive-by shooting.

"50.     On April 5, 2018, the court conducted a preliminary hearing in both cases. The defendant was bound over for trial. The drive-by shooting case was scheduled for trial to begin on August 13, 2018.

"51.     On April 23, 2018, the respondent filed a motion to suppress. The court scheduled the hearing on the motion for August 2, 2018. On July 30, 2018, the respondent sent an email message to the prosecutor in the drug case and alleged that he was sick, he was out of the country, and he was requesting a continuance of the hearing on the motion to suppress. The prosecutor provided the respondent with the court's email address and advised the respondent to make his request to the court.

"52.     The respondent did not file a motion to continue the hearing on the motion to suppress. The respondent did not appear on August 2, 2018, for the suppression hearing. The respondent did not appear at the August 13, 2018, trial nor did he request a continuance. Finally, the respondent did not notify his client that he would not be present at the suppression hearing and the trial.

"53.     The court scheduled additional matters for hearing for September 26, 2018, and October 10, 2018. The respondent did not appear at those hearings. Further, the respondent did not request continuances of those hearings. Throughout this time period, R.C.M. was in custody.

"54.     On August 30, 2018, the Honorable Thomas Kelly Ryan, a judge with the Johnson County District Court, filed a complaint with the disciplinary administrator's

11

office against the respondent regarding the respondent's misconduct in these two criminal cases. The disciplinary administrator's office forwarded a copy of Judge Ryan's complaint to the respondent on August 31, 2018. The disciplinary administrator's office directed the respondent to provide a written response to the complaint within 20 days. The respondent did not provide a written response to the complaint within 20 days as directed.

"55.    The attorney assigned to investigate Judge Ryan's complaint also directed the respondent to provide a written response to the complaint. The respondent did not provide a written response as directed by the attorney assigned to investigate the complaint. Eventually, after the deadline, which had been extended twice, the respondent provided a written response to the complaint. However, by that time, the investigation had been completed.

"*DA13268*

"56.    R.C.M.'s mother and father paid the respondent $12,000 to represent their son in the cases described above as well as in an additional case in the Kansas City, Kansas Municipal Court. The respondent abandoned his client. The respondent failed to refund unearned fees to R.C.M.'s mother and father.

"57.    R.C.M.'s mother and father filed complaints with the disciplinary administrator's office regarding the respondent's abandonment of the representation of their son. The disciplinary administrator's office provided the respondent with a copy of the complaint on February 13, 2019. The disciplinary administrator's office directed the respondent to provide a written response to the complaint within 20 days. The respondent failed to provide a written response to the complaint.

"58.    During the course of the investigation of this case, the disciplinary administrator's office learned that the respondent was no longer working from the address shown on the attorney's most recent registration (which was also the respondent's last known office address) and also learned that the respondent was no longer living at the address shown on the attorney's most recent registration.

"59.     A copy of the amended formal complaint and notice of hearing was sent to the respondent at the address shown on the respondent's most recent registration which was also his last known office address, by regular mail and by certified mail. Both packages were returned to the disciplinary administrator's office and marked 'return to sender unable to forward.' Additionally, a copy of the amended formal complaint and notice of hearing was sent to the respondent by regular mail to the residential address shown on the respondent's most recent registration. The package was returned to the disciplinary administrator's office with a note that the respondent does not live at that address.

"*Conclusions of Law*

"60.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.16 (termination of representation), KRPC 3.1 (meritorious claims and contentions), KRPC 3.2 (failure to expedite litigation), KRPC 3.3 (candor toward the tribunal), KRPC 3.4 (fairness to opposing party and counsel), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), Kan. Sup. Ct. R. 208 (registration), and Kan. Sup. Ct. R. 211(b) (duty to file answer), as detailed below.

"61.     The respondent failed to appear at the hearing on the formal complaint. It is appropriate to proceed to hearing when a respondent fails to appear only if proper service was obtained. Kan. Sup. Ct. R. 215 governs service of process in disciplinary proceedings. That rule provides, in pertinent part as follows:

'(a)     Service upon the respondent of the formal complaint in any disciplinary proceeding shall be made by the Disciplinary Administrator, either by personal service or by certified mail to the address shown on the attorney's most recent registration, or at his or her last known office address.

. . . .

13

'(c)      Service by mailing under subsection (a) or (b) shall be deemed complete upon mailing whether or not the same is actually received.'

In this case, the Disciplinary Administrator complied with Kan. Sup. Ct. R. 215(a) by sending a copy of the amended formal complaint and the notice of hearing, *via* certified United States mail, postage prepaid, to the address shown on the respondent's most recent registration. The hearing panel concludes that the respondent was afforded the notice that the Kansas Supreme Court Rules require.

## "KRPC 1.1

"62.      Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent failed to provide competent representation to K.K., E.M., and the other plaintiffs in the suit against Judge Fleming, *et al.*, by failing to sufficiently investigate the authenticity of Exhibit 2. When the respondent failed to timely achieve service on the City of Wichita, the respondent failed to provide competent representation to K.T. When the respondent abandoned R.C.M., the respondent failed to provide competent representation. Accordingly, the hearing panel concludes that the respondent repeatedly violated KRPC 1.1 by failing to provide the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation of his clients.

## "KRPC 1.3

"63.      Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent K.T. in her suit against the City of Wichita. The respondent lacked diligence in his representation of P.F. in the probate case. Finally, the respondent failed to diligently and promptly represent R.C.M. in his criminal case. Because the respondent failed to act with reasonable diligence and promptness in representing his clients, the hearing panel concludes that the respondent repeatedly violated KRPC 1.3.

14

## "KRPC 1.4

"64.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to respond to P.F.'s requests for information regarding the status of the representation. The respondent also violated KRPC 1.4(a) when he failed to keep R.C.M. informed about the status of the representation. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

## "KRPC 1.16(d)

"65.     KRPC 1.16(d) requires lawyers to take certain steps to protect clients after the representation has been terminated:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when he failed to refund the unearned fees to P.F. and R.C.M. The hearing panel concludes that the respondent violated KRPC 1.16(d) in his representation of P.F. and R.C.M.

## "KRPC 3.1

"66.     Attorneys are prohibited from bringing or defending a proceeding unless there is a basis for doing so that is not frivolous. KRPC 3.1. Comment 1 to KRPC 3.1 provides, 'The advocate has a duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure.' In this case, the respondent

abused legal procedure when he relied on evidence which he knew was altered and therefore fraudulent in his representation of K.K., E.M., and the other plaintiffs in the suit filed against Judge Fleming, *et al*. As such, the hearing panel concludes that the respondent violated KRPC 3.1.

"KRPC 3.2

"67.    An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The respondent caused unnecessary delay in R.C.M.'s criminal cases by repeatedly failing to appear in court for hearings and trial. The effect of the unnecessary delay was compounded because R.C.M. remained in custody. Accordingly, the hearing panel concludes that the respondent violated KRPC 3.2.

"KRPC 3.3(a)(3)

"68.    A lawyer shall not knowingly:

'offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.'

KRPC 3.3(a)(3). By attaching Exhibit 2 to the second amended complaint filed on behalf of K.K., E.M., and the other plaintiffs, the respondent offered evidence that he knew to be false. The hearing panel concludes that the respondent violated KRPC 3.3(a)(3) by offering evidence which he knew to be false.

16

"69.     A lawyer shall not 'knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.' KRPC 3.4(c). The respondent repeatedly failed to appear in court as ordered on behalf of R.C.M. Because the respondent repeatedly failed to appear in court as ordered on behalf of R.C.M., the hearing panel concludes that the respondent violated KRPC 3.4(c).

"KRPC 8.1

"70.     Lawyers must cooperate in disciplinary investigations. *See* 8.1(b). The disciplinary administrator's office and the attorney assigned to investigate the complaints directed the respondent to provide timely written responses to the disciplinary complaints filed against him. The respondent failed to timely provide a written response to complaints filed by K.T., P.F., Judge Ryan, and R.C.M.'s mother and father. Because the respondent knowingly failed to provide written responses to the complaints, the hearing panel concludes that the respondent violated KRPC 8.1(b).

"KRPC 8.4(c)

"71.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he attached Exhibit 2 to the second amended complaint filed on behalf of K.K., E.M., and the other plaintiffs knowing to have been altered. The hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"72.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he (1) presented altered evidence to the court, (2) failed to timely serve the City of Wichita in the suit filed on

17

behalf of K.T., and (3) failed to appear in court on behalf of R.C.M. and thereby abandoned R.C.M.'s representation. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"Kan. Sup. Ct. R. 208

"73.     Attorneys must notify the Clerk of the Appellate Courts of any change of address within 30 days. Kan. Sup. Ct. R. 208(c) (as amended March 20, 2013). The respondent is no longer working from the office address shown on the respondent's most recent registration which is also his last known office address. The respondent is no longer living at the residential address shown on the attorney's most recent registration. Additionally, in correspondence received from the respondent, in November, 2019, the respondent promised to provide a current address in the United States. The respondent did not provide the disciplinary administrator's office with a current address nor did he update his registered addresses with the Clerk of the Appellate Courts. The hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 208(c) (as amended March 20, 2013).

"Kan. Sup. Ct. R. 211(b)

"74.     The Kansas Supreme Court Rules require an attorney to file an answer to a formal complaint. Kan. Sup. Ct. R. 211(b) provides the requirements:

'The respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.' Kan. Sup. Ct. R. 211(b).

The respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written answer to the formal complaint. Additionally, the respondent violated Kan. Sup. Ct. R. 211(b) when he failed to file an answer to the amended formal complaint. Accordingly, the hearing panel concludes that the respondent violated Kan. Sup. Ct. R. 211(b).

18

"75.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"76.     *Duty Violated*. The respondent violated his duty to his clients to provide competent and diligent representation and adequate communication. The respondent violated his duty to the public to maintain his personal integrity. The respondent violated his duty to the legal profession to cooperate in attorney disciplinary investigations. Finally, the respondent violated his duty to the legal system to refrain from engaging in conduct that resulted in prejudice to justice.

"77.     *Mental State*. The respondent knowingly and intentionally violated his duties.

"78.     *Injury*. As a result of the respondent's misconduct, the respondent caused actual serious injury. Specifically, the respondent caused actual serious injury to R.C.M. R.C.M. remained in custody for months while the respondent failed to appear in court and otherwise provide representation. Moreover, the respondent cause actual serious injury to the legal system and the legal profession by providing false evidence to the court, by failing to appear in court, and by failing to cooperate in disciplinary investigations.

"Aggravating and Mitigating Factors

"79.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its

19

recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a. *Dishonest or Selfish Motive*. The respondent engaged in dishonest conduct when he attached altered evidence to the second amended complaint in the litigation filed on behalf of K.K., E.M., and the other plaintiffs. The respondent engaged in selfish conduct when he accepted $12,000 to provide representation to R.C.M. and then failed to do so. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty and selfishness.

b. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct. The respondent failed to provide competent representation to three clients. Additionally, the respondent failed to provide diligent representation to three clients. Finally, the respondent failed to cooperate in the investigation of four disciplinary complaints.

c. *Multiple Offenses*. The respondent violated KRPC 1.1 (competence), KRPC 1.3 (diligence), KRPC 1.4 (communication), KRPC 1.16 (termination of representation), KRPC 3.1 (meritorious claims and contentions), KRPC 3.2 (failure to expedite litigation), KRPC 3.3 (candor toward the tribunal), KRPC 3.4 (fairness to opposing party and counsel), KRPC 8.1 (cooperation), KRPC 8.4 (professional misconduct), Kan. Sup. Ct. R. 208 (registration), and Kan. Sup. Ct. R. 211(b) (duty to file answer). The hearing panel concludes that the respondent committed multiple offenses.

d. *Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The respondent failed to provide timely written responses to four complaints. The respondent's repeated failure to provide timely written responses to disciplinary complaints amounts to bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules and orders of the disciplinary process.

e.  *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process*. In the respondent's response to the complaint filed in DA12759, the respondent stated:

'. . . In due course, a sympathizer anonymously dropped a copy of the email with a portion of it cut off to one of the grand jury petition participants. During the course of the investigation, some witnesses were identified who claimed to have seen the original email and know what the cut-off portion of the email says. Based on those witnesses' statements, [E.M.] prepared a proffered version of the email showing what he believes the cut-off portion of the original email will say, which was attached as Exhibit 2 to [K.K.]'s second amended complaint.

'Later on defendant [*sic*] counsel Stephen Phillips provided a purported copy of the original email defendant Fleming sent to defendant Wachter on February 19, 2014 [*sic*]; and a CD which purported [*sic*] have the original version of the email; and demanded that [K.K.] dismiss his case under penalty of rule 11 sanctions. [K.K.] doubted the authenticity of the email defendant's counsel represent [*sic*] as the original email. It turns out that the email defense counsel Phillips claimed to be the original email was modified and corrupted with Phillips' name appearing in the metadata. See attached document #70 and 79.

'Because the authenticity of the original email is hotly contested, I believe I have a duty to zealously advocate my client's position. Unfortunately, however, the identified witnesses refused to cooperation [*sic*] further because of lack of legal protection such as testimony in deposition or in court; and because they fear that they will lose their jobs. So, we were unable to support our position with their affidavits in response to [*sic*] motion for sanctions.

'It is clear that I did the best I could do to investigate the email saga, but the witnesses, protecting their own livelihood refused to continue to cooperate when it matters [*sic*] most. It is also clear that I didn't have any intention to mislead the court to believe Exhibit 2 was the 'original' email which is why I designed it as 'unofficial' version, which apparently is insufficient. Hence, I believe no rule of professional conduct is violated; and request that opposing counsel's complaint be dismissed.

'Meanwhile, I request that opposing counsel Steven Phillips' conduct representing the modified and corrupted email as the original e-mail be investigated under Rule 8.3 of the Kansas Rules of Professional Conduct.'

The respondent's statements quoted above were false and deceptive. In the underlying litigation, the respondent did not investigate the authenticity of the 'unofficial' email message. The respondent did not ask either party to the email message for a copy of the original email message. Additionally, the respondent failed to ask counsel for Judge Fleming or counsel for Mr. Wachter for a copy of the original email message. Additionally, in making the statements above, the respondent disregarded the conclusion of both the United States District Court for the District of Kansas as well as the United States Court of Appeals for the Tenth Circuit that the email message presented by his client was altered. The hearing panel concurs in the Tenth Circuit's statement that the respondent has 'again and again clung to the falsified e-mail as true.' The hearing panel concludes that by continuing to cling to the falsified email as true in the disciplinary investigation, the respondent engaged in a deceptive practice.

f. *Refusal to Acknowledge Wrongful Nature of Conduct*. The respondent has refused to acknowledge the wrongful nature of including Exhibit 2 in the litigation involving Judge Fleming. The respondent also denied any wrongdoing in his representation of K.T. The respondent failed to acknowledge that it was his responsibility to ensure timely service. The respondent also denied any wrongdoing associated with his representation of

22

P.F. Finally, in his representation of R.C.M., the respondent admitted that he should have communicated with opposing counsel and the court more effectively. However, again, the respondent did not admit that his conduct violated any Kansas Rules of Professional Conduct. The hearing panel concludes that the respondent refused to acknowledge the wrongful nature of his conduct.

g. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1991. At the time of the misconduct, the respondent had been practicing law for more than 20 years.

"80. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found one mitigating circumstance present:

a. *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined.

"81. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.41 Disbarment is generally appropriate when:

'(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

'(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

'(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.'

23

'6.11    Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.'

'7.2    Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'"

## DISCUSSION

"In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence." *In re Saville*, 311 Kan. 221, 232, 458 P.3d 976 (2020); see also Supreme Court Rule 211(f) (2020 Kan. S. Ct. R. 254) ("To warrant a finding of misconduct the charges must be established by clear and convincing evidence."). Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'" *Saville*, 311 Kan. at 233 (quoting *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 [2009]).

Respondent was given ample notice of the disciplinary proceedings against him. On January 25, 2019, the Disciplinary Administrator's office filed the original formal complaint and a notice of hearing confirming a hearing was scheduled for March 20, 2019. Respondent failed to file an answer to the formal complaint as required by Kansas Supreme Court Rule 211(b).

24

On March 4, 2019, respondent asked for a continuance. The Disciplinary Administrator's office objected to the continuance, unless respondent agreed to a temporary suspension of his law license. Respondent did not reply and failed to appear at a prehearing conference on March 13, 2019. Despite respondent's failure to appear, the hearing panel granted a continuance to December 5, 2019.

The amended complaint was filed October 10, 2019. A copy of the amended complaint and a notice of hearing was sent to the business address shown on the respondent's most recent attorney registration by both regular and certified mail. Both were returned to the Disciplinary Administrator's office marked "return to sender unable to forward." The Disciplinary Administrator's office also sent the amended complaint and notice of hearing to respondent's most recent residential address. This too was returned as undeliverable. Again, respondent failed to file an answer as required by Kansas Supreme Court Rule 211(b).

The Disciplinary Administrator's office also filed a notice of hearing for December 5, 2019. Respondent emailed the Disciplinary Administrator's office on November 10, 2019, claiming he was still in Nigeria and could not make the scheduled December hearing and that he would again ask for a continuance. He followed up with a second email on November 13, 2019 to the same effect. Respondent failed to file a motion to continue. His email correspondence, however, is a clear indication of actual notice of the various proceedings, deadlines, and settings.

The Disciplinary Administrator's office proceeded with the hearing on December 5, 2019. Respondent failed to appear. The final hearing report was issued on March 23, 2020. Respondent did not file exceptions to the final hearing report. As such, the panel's

factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2020 Kan. S. Ct. R. 258).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.1 (2020 Kan. S. Ct. R. 291) (competence); KRPC 1.3 (2020 Kan. S. Ct. R. 295) (diligence); KRPC 1.4 (2020 Kan. S. Ct. R. 296) (communication); KRPC 1.16 (2020 Kan. S. Ct. R. 340) (declining or terminating representation); KRPC 3.1 (2020 Kan. S. Ct. R. 352) (meritorious claims and contentions); KRPC 3.2 (2020 Kan. S. Ct. R. 353) (expediting litigation); KRPC 3.3 (2020 Kan. S. Ct. R. 353) (candor toward the tribunal); KRPC 3.4 (2020 Kan. S. Ct. R. 357) (fairness to opposing party and counsel); KRPC 8.1 (2020 Kan. S. Ct. R. 392) (bar admission and disciplinary matters); KRPC 8.4 (2020 Kan. S. Ct. R. 394) (misconduct); Kansas Supreme Court Rule 208 (2020 Kan. S. Ct. R. 247) (attorney registration); and Kansas Supreme Court Rule 211(b) (2020 Kan. S. Ct. R. 251) (timely answer to formal disciplinary complaint). We adopt the panel's findings and conclusions.

The only remaining issue is determining the appropriate discipline for respondent's violations. At the panel hearing, the Disciplinary Administrator's office recommended disbarment. The hearing panel unanimously agreed respondent should be disbarred. At the hearing before this court, the Disciplinary Administrator's office again recommended disbarment.

The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 212(f) (2020 Kan. S. Ct. R. 258); *In re Kline*, 298 Kan. 96, 212-13, 311 P.3d 321 (2013). After careful consideration, the court holds the respondent should be disbarred.

26

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Adebayo I. Ogunmeno be and he is hereby disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2020 Kan. S. Ct. R. 234).

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Adebayo I. Ogunmeno from the roll of attorneys licensed to practice law in Kansas.

IT IS FURTHER ORDERED that Ogunmeno comply with Supreme Court Rule 218 (2020 Kan. S. Ct. R. 265).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to Ogunmeno and that this opinion be published in the official Kansas Reports.

BRUCE C. BROWN, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  District Judge Brown was appointed to hear case No. 122,867 under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution to fill the vacancy on the court by the retirement of Justice Carol A. Beier.